COMMONWEALTH *vs.* PEDRO CLAUDIO, JR.

Essex. March 8, 1994. - June 14, 1994.

Present: LIACOS, C.J., NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Breaking and Entering. Burglary. Felony-Murder Rule. Practice, Criminal,* Instructions to jury. *Joint Enterprise. Evidence,* Consciousness of guilt.

Discussion of cases considering whether an assault culminating in a homicide preceded by an illegal breaking and entering into a dwelling in the night time that has as its purpose the commission of an armed assault satisfies the requirements of the felony-murder rule. [105-108]

Discussion of Massachusetts cases considering felonies giving rise to application of the felony-murder rule. [108-109]

Armed assault in a dwelling, G. L. c. 266, § 14, is a crime inevitably posing a high degree of danger to any and all occupants, sufficiently distinct from armed assault in other circumstances to justify treating a violation of that statute as predicating a charge of murder in the first degree by reason of felony-murder. [109]

At the trial of indictments for murder in the first degree and armed assault in a dwelling (G. L. c. 266, § 14) on a felony-murder theory, in which it was argued that the defendant could be convicted either if he stabbed the victim himself or, if he did not, as a joint participant with others in the breaking and entering that culminated in the fatal assault, the judge erred in failing to instruct on joint venture liability that the Commonwealth must prove beyond a reasonable doubt that the defendant actually knew one of his companions was armed with a knife or other dangerous weapon; where it appeared that the jury may have returned a guilty verdict based solely on the defendant's status as a joint venturer without a finding on the knowledge element, a new trial was required on the murder indictment. [109-116]

At the trial of indictments for first degree murder and armed assault in a dwelling (G. L. c. 266, § 14) on a felony-murder theory, the judge's instructions to the jury did not define "felony" and did not inform the jury that for conviction under G. L. c. 266, § 14, the Commonwealth must prove the defendant's specific intent, or shared intent, to commit, after entry in the dwelling, the felony of armed assault; where the judge's instructions on joint venture liability in connection with the murder charge contained prejudicial error, a substantial risk of a mis-

carriage of justice was created, and the defendant was entitled to a new trial on the indictment for the underlying felony. [116-119]

At the trial of a criminal case, the judge properly and in his discretion instructed the jury on consciousness of guilt. [119]

INDICTMENTS found and returned in the Superior Court Department on July 3, 1991.

The cases were tried before *J. Harold Flannery*, J.

*M. Page Kelley*, Committee for Public Counsel Services, for the defendant.

*Robert J. Bender*, Assistant District Attorney (*David W. Duncan*, Assistant District Attorney, with him) for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant, Pedro Claudio, Jr., of breaking and entering a dwelling in the night time with intent to commit a felony and assaulting a person lawfully therein, see G. L. c. 266, § 14 (1992 ed.), and murder in the first degree by reason of felony-murder.[1] The defendant is represented by new counsel on appeal. We reject his argument that an unlawful breaking and entering into a dwelling in the night time, with intent to commit an armed assault on a lawful occupant of the dwelling, which is followed by an actual assault, cannot serve as the predicate for a conviction of murder in the first degree under the felony-murder rule. However, we accept the defendant's contention that omissions in the jury instructions concerning joint venture and the elements of the underlying felony require reversal of both convictions and a new trial.

The jury could have found the following background facts. On the night of June 14, 1991, on Summer Street in Lawrence, two men, one of whom was Gregory Fernandez, began to fight. The defendant, a friend of Fernandez, attempted to keep others from interfering with the fight. In doing so, the defendant became involved in an argument with two other

---

[1]The defendant was also indicted for armed assault in a dwelling, see G. L. c. 265, § 18A (1992 ed.). Before the trial commenced, the Commonwealth elected not to proceed on this indictment.

men, Felix Figueroa and Samuel Abreu, the victim, who tried to break up the fight in response to a plea for assistance made by Fernandez's wife. Figueroa threw a rock at the defendant's automobile, breaking a window.

After threatening to return to the place of the fight, the defendant drove away. About twenty minutes later, he returned with six companions. Figueroa, who was outside, ran into the building in which his apartment was located, pursued by the defendant and two of his companions. The victim was already inside the apartment. Figueroa indicated that he and the victim briefly attempted to hold the door (which opened into the apartment) against their pursuers, and then abandoned the attempt. Figueroa ran through the apartment and out a back door, hiding until he saw the defendant and his companions drive away. Shortly after the defendant and his companions pushed their way into Fernandez's apartment, the victim was found near the front door, with the single stab wound to his chest which caused his death.

1. *Felony-murder and the merger doctrine.* The defendant argues that his conviction of murder in the first degree must be reversed because the felony established by G. L. c. 266, § 14, of breaking and entering a dwelling in the night time with intent to commit armed assault on an occupant of the dwelling, and commission of such an assault,[2] cannot predicate a conviction of murder in the first degree by reason of felony-murder. The defendant contends that, when an armed assault culminates in a homicide, even when that assault is preceded by an unlawful breaking and entering into a dwell-

---

[2]General Laws c. 266, § 14 (1992 ed.), provides, in pertinent part, as follows:

> "Whoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years."

ing in the night time, "the conduct which constitutes the felony [is not sufficiently] 'separate from the acts of personal violence which constitute a necessary part of the homicide itself,'" *Commonwealth* v. *Quigley*, 391 Mass. 461, 466 (1984), cert. denied, 471 U.S. 1115 (1985), quoting W.R. Lafave & A.W. Scott, Jr., Criminal Law § 71, at 559 (1972), to predicate felony-murder. In essence, the defendant contends that, in these circumstances, the armed assault with which he is charged "merges" with, or is an element of, the homicide. See *State* v. *Branch*, 244 Or. 97, 100 (1966), quoted with approval in *Commonwealth* v. *Quigley*, *supra* ("[C]ourts . . . have held that where the only felony committed [apart from the murder itself] was the assault upon the victim which resulted in the death of the victim, the assault merged with the killing and could not be relied upon by the state as an ingredient of a 'felony murder'").[3] We have not had occasion to consider whether an assault culminating in a homicide, preceded by an illegal breaking and entering into a dwelling in the night time that had as its purpose the commission of an armed assault, satisfies the requirements of the Commonwealth's felony-murder rule. Other courts that have considered the question have differed on whether, on facts like those present here, the felony-murder rule may be applied.

The minority view is represented by *People* v. *Wilson*, 1 Cal. 3d 431 (1969), in which the Supreme Court of California considered a case where the defendant, estranged from his wife, broke into his wife's apartment and shot her. The instructions given to the jury permitted them to find that the defendant had entered "with an intent to commit an assault with a deadly weapon and thereby committed a burglary, in the course of which he killed his wife and thus committed first degree felony murder." *Id.* at 439. The court concluded that a jury should not be instructed that "the intent to as-

---

[3]The defendant's trial counsel also advanced this argument in support of the defendant's motion, under Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), for a required finding of not guilty on the murder indictment.

sault makes the [illegal] entry burglary and that the burglary raises the homicide resulting from the assault to first degree murder without proof of malice aforethought and premeditation." *Id.* at 441. The court went on to state the following: "To hold otherwise, we would have to declare that because burglary is not technically a lesser offense included within a charge of murder, burglary constitutes an independent felony which can support a felony-murder instruction. . . . [We think that] a burglary based on intent to assault with a deadly weapon is included in fact within a charge of murder, and cannot support a felony-murder instruction." *Id.* See also *Parker* v. *State*, 292 Ark. 421 (1987) (for purpose of Arkansas felony-murder statute, burglary must have objective independent of commission of assault which leads to murder).

The majority, and, in our opinion, better reasoned view is to the contrary. See 2 W.R. LaFave & A.W. Scott, Jr., Substantive Criminal Law § 7.5, at 230 (1986) (collecting cases). In the leading case of *People* v. *Miller*, 32 N.Y.2d 157 (1973), the New York Court of Appeals rejected the argument that a breaking and entering with the intent to commit an armed assault could not serve as the felony underlying a conviction for felony-murder. Under the Penal Law of New York, only certain enumerated felonies (which, in general, would be classified under the Commonwealth's criminal law as felonies inherently dangerous to human life) may serve as the basis for a charge of felony-murder. Burglary, defined as an unlawful entry into a building with intent to commit a crime in the building entered, is one of these enumerated felonies. *Id* at 159. See N.Y. Penal Law § 140.20 (McKinney 1991).

In the *Miller* decision, the court commented that, in imposing greater punishment for a criminal act committed within a domicil than for the same act committed on the street, the New York Legislature had "recognized that persons within domiciles are in greater peril from those entering the domicile with criminal intent, than persons on the street who are being subjected to the same criminal intent," *id.* at

160, and that this principle applies with equal force to a person entering a domicil with the intent to commit an assault as it does to the person entering a domicil with the intent to commit, for example, an armed robbery. The court observed that, "[w]hen the assault takes place within the domicile, the victim may be more likely to resist the assault [and] less likely to be able to avoid the consequences of the assault, since his paths of retreat and escape may be barred . . . . Further, it is also more likely that when the assault occurs in the victim's domicile, there will be present family or close friends who will come to the victim's aid and be killed." (Footnote omitted.) *Id.* at 160-161. The court concluded that the New York Legislature intended its codification of the felony-murder rule to encompass, as a predicate felony, an unlawful entry with intent to commit armed assault, and that this interpretation of the statutory criminal law was entirely consistent with the rationale underlying the felony-murder rule, which seeks "to reduce the disproportionate number of accidental homicides which occur during the commission of the enumerated predicate felonies by punishing the party responsible for the homicide not merely for manslaughter, but for murder." *Id.* at 161.

The felony-murder rule in Massachusetts "is defined by common law." *Commonwealth* v. *Moran,* 387 Mass. 644, 648 (1982). "We have never delineated exactly which felonies give rise to application of the rule," *Commonwealth* v. *Matchett,* 386 Mass. 492, 505 (1982). Instead, we have considered on a case-by-case basis, and sometimes by reference to specific facts, whether a particular felony was (or was committed in such a way as to be) "inherently dangerous to human life." *Commonwealth* v. *Moran, supra* at 651.

As a general principle, our cases treat those felonies involving the use of a deadly weapon, such as a knife or a loaded gun, as inherently dangerous to human life. See *Commonwealth* v. *Currie,* 388 Mass. 776, 785 (1983); *Commonwealth* v. *Watson,* 388 Mass. 539, 544 (1983). Imposition of liability under the felony-murder rule, when a homicide occurs in the commission of an offense while armed, is justified

because a defendant's willingness to use a weapon demonstrates a conscious disregard for human life, see *Commonwealth* v. *Watson*, *supra* at 543, or malice. In addition, by statute, our criminal law considers as particularly egregious burglaries involving entry into a residence. See and compare G. L. c. 266, §§ 14 and 15, with G. L. c. 266, §§ 16, 16A, and 17 (1992 ed.). Indeed, the statute with which we are concerned, G. L. c. 266, § 14, makes breaking and entering in the circumstances that occurred here subject to a mandatory minimum sentence of ten years imprisonment and permits a maximum sentence of life imprisonment. In setting that penalty, the Legislature has recognized the risks inherent in an unlawful entry during the night time into a dwelling, which inevitably poses a high degree of danger to any and all occupants. See *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 356 (1988); *Commonwealth* v. *Goldoff*, 24 Mass. App. Ct. 458, 462 (1987) ("It is the purpose of burglary statutes . . . to prohibit that conduct which violates a person's right of security in a place universally associated with refuge and safety, the dwelling house"). .

As discussed, the New York Court of Appeals has refused to treat as negligible, or irrelevant, for purposes of the felony-murder rule "the invasion of a dwelling under circumstances so likely to terrorize the occupants." *Commonwealth* v. *Ricardo*, *supra*. Other courts have similarly rejected a merger argument like that propounded by the defendant. See *State* v. *Miller*, 110 Ariz. 489 (1974); *Blango* v. *United States*, 373 A.2d 885 (D.C. 1977); *State* v. *Foy*, 224 Kan. 558 (1978); *People* v. *Miller, supra*; *State* v. *Reams*, 292 Or. 1 (1981). We agree that the elements of a breaking and entering in a residence in the night time sufficiently distinguish a violation of G. L. c. 266, § 14, from armed assault in other circumstances, so as to justify treating a violation of that statute as predicating a charge of murder in the first degree by reason of felony-murder. We now turn to whether such liability was properly imposed in this case.

2. *Omissions in jury instructions.* The Commonwealth proceeded against the defendant on two theories of murder in

the first degree. The first, deliberate premeditation, was rejected by the jury. The second, as discussed above, was felony-murder, the underlying felony being the unlawful breaking and entering in the night time into Figueroa's apartment, with intent to commit an armed assault, and the commission of the assault on the victim. Consistent with his view of the case, the prosecutor argued to the jury that the defendant could be convicted either if he stabbed the victim or, if the defendant did not stab the victim, as a joint participant with others in the breaking and entering culminating in the fatal assault. The defendant did not deny his participation in the breaking and entering of Figueroa's apartment. He maintained that another member of the group had stabbed the victim.[4]

The defendant has correctly identified two omissions in the jury charge. He claims that these omissions, one concerning the requirements of joint venture, and the other an element of proof as to the underlying felony, may have relieved the Commonwealth of the burden of proving facts necessary for a finding of murder in the first degree by reason of felony-murder. We agree.

a. The jury were charged that the defendant could be found guilty of the underlying felony, and of murder in the first degree by reason of felony-murder, even if they were not convinced beyond a reasonable doubt that the defendant had stabbed the victim. Conviction was proper, the jury were told, if they found that the defendant had participated as a joint venturer in the underlying or predicate felony of bur-

---

[4]The defendant did not testify at trial nor did he give a full statement to the police. His position at trial was consistent with a brief out-of-court statement which he had volunteered to a Spanish-speaking police officer. That officer testified that he was sitting next to the defendant in the police station while they waited for the State police chemist and photographer. The defendant, who was not being questioned, spontaneously volunteered: "That motherfucker vandalized my car. I only chased [the victim] into the house. I didn't stab him."

glary. While accurate as far as it went,[5] the portion of the charge on joint venture liability failed specifically to inform the jury that they could find the defendant guilty as a joint venturer of breaking and entering in the night time with intent to commit an armed assault, and commission of an assault, *only if* the Commonwealth proved, beyond a reasonable doubt, that the defendant actually knew that one of his companions was armed with a knife or other dangerous weapon. The defendant was clearly entitled to such an instruction. See *Commonwealth* v. *Bourgeois*, 404 Mass. 61, 64 (1989) (where armed robbery and armed assault were underlying felonies, defendant could not be liable for felony-murder as accessory unless he knew his accomplice was armed); *Commonwealth* v. *Watson*, 388 Mass. 536, 543-546 (1983), *S.C.*, 393 Mass. 297 (1984).[6]

---

[5]The jury were instructed:

"A person may be found guilty of a crime even if he or she did not personally do the act but instead aided and abetted [its] commission as part of a joint venture or joint enterprise with another person or with other persons. . . . In a joint venture a person is guilty if he intentionally participates with another in the commission of a crime as something he wishes to bring about and seeks by his actions to make it succeed. In order to prove the defendant guilty of a crime committed by joint venture, the Commonwealth must prove two things beyond a reasonable doubt. First, that the defendant aided or assisted in the commission of the crime . . . . Second, that the defendant did so while sharing the intent required to commit the crime in all respects. . . . You are permitted, although not required to infer that the defendant had the necessary intention if the defendant knew what was going on and participated actively in the crime . . . ."

[6]The Commonwealth contends that this point was not preserved for appeal. Although the defendant should have done more, the claim of error has been preserved. The defendant's request for jury instructions included a request for a "*Watson*," or knowledge, instruction. After the judge concluded his instructions to the jury, counsel were invited to voice their objections, if any, to the charge. The prosecutor stated to the judge: "I just have one major point. . . . I don't think you clearly explained that on the felony murder theory that he could be found guilty as a joint venturer and not have to be the stabber as long as he knew that someone was there with the weapon." The judge declined to remedy the omission.

Counsel for the defendant should have added his objection to the prosecutor's. See Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979). The purpose of the rule is to bring to the judge's attention a possible error in the charge

We reject the Commonwealth's argument that the judge's general instruction on specific intent, to the effect that the jury could not find the defendant guilty as a joint venturer unless they found that he shared "the intent required to commit the crime in all respects," sufficiently apprised the jury of the missing element.[7] An argument of this nature was rejected in *Commonwealth* v. *Watson*, *supra* at 545, which involved an instruction essentially similar to the one given in this case.

There is also no basis to conclude that an instruction based on the *Watson* decision would have been incompatible with the defendant's trial strategy. As the judge observed prior to commencement of the trial, it was obvious that the defendant would face possible liability on a joint venture theory. Joint venture liability might (perhaps) be described as somewhat at odds with the defendant's trial strategy (a denial of any part in the stabbing), because the theory left him open to conviction even if the jury were not convinced that he had stabbed the victim. He could not, however, on that basis, avoid argument and instruction on joint venture. The evidence from prosecution witnesses warranted the Common-

---

before the jury retire to deliberate. *Commonwealth* v. *Matos*, 394 Mass. 563, 565 (1985). However, a request from a prosecutor for an additional instruction favorable to the defendant is unusual. The prosecutor's objection concisely informed the judge of a significant omission from the charge on a point which had formed an important part of the prosecutor's closing argument. Once the prosecutor's request had been denied, the defendant's counsel may have thought he would have no better success. We treat the point as properly preserved on appeal.

[7]There was testimony from Figueroa and his domestic partner that one or two of the defendant's companions may have been armed with sticks. This testimony was effectively impeached, however, and there was testimony from another Commonwealth witness that, before the group arrived at Figueroa's apartment building, no one was visibly armed. This witness testified that, when the group reached the door of the apartment building, he saw that one man was holding "a plastic hollow stick." As the evidence was equivocal on whether any member of the group was armed with a stick or a bat capable of inflicting serious bodily injury, we need not decide whether, as the defendant contends, the jury could find the defendant guilty as an accessory to armed assault only if they found that he knew that one of his companions was armed with a knife.

wealth in proceeding, as it did, on a joint venture theory. That being the case, the defendant was equally entitled to a jury charge that required the Commonwealth to prove, beyond a reasonable doubt, every essential element of that theory, including the critical knowledge element.

It cannot be said with certainty that the error could not have prejudiced the defendant. The identity of the stabber, and whether any member of the group (including the defendant) was visibly armed, were disputed at trial. Several witnesses testified that they saw the defendant with a knife in the course of the incident. Figueroa testified that he saw a knife in the defendant's hands as the defendant and his companions approached Figueroa's apartment building. Sergio Renta, son of Figueroa's domestic partner, Norma Renta, also testified that he saw the defendant at the door to the apartment, holding a knife and making stabbing motions. Norma Renta testified that, after Figueroa and his pursuers ran through the apartment, she saw the defendant holding a knife, standing in the same room as the victim, who was on the floor. Two of the defendant's companions (both of whom apparently remained outside of Figueroa's apartment and threw rocks through the window) indicated that, as the group was leaving the scene in the defendant's automobile, the defendant said words to the effect of "I got him here," and banged on his chest. One of these witnesses claimed that the defendant displayed a knife while in the automobile.

This evidence was sufficient, if accepted by the jury, to establish that the defendant had stabbed the victim. However, the testimony of these witnesses was considerably, and effectively, impeached on cross-examination by reference to prior inconsistent statements and evidence of bias. Figueroa, who testified at trial that, as the group approached the apartment, "they had things in their hands like knives and sticks and rocks," and that the defendant had a knife, told a State police officer who questioned him immediately after the incident that he did not know if the group coming toward his house had any weapons, and he said nothing in this interview about seeing the defendant with a knife. Norma Renta may

have said immediately after the incident that she saw the defendant with a knife, but she testified that she remembered nothing about the clothing of the defendant or the appearance of the knife, and she claimed to have pushed the man, who was holding a knife, out of the apartment. It also appeared that, earlier in the evening, she had incited her husband to get his gun and shoot the defendant. Inconsistencies between her prior statements to the police and her trial testimony·provided a basis to find her testimony unreliable and biased against the defendant. Sergio Renta also gave several statements to the police which were inconsistent with each other, and inconsistent to various degrees with his trial testimony.[8] Although the boy testified that Figueroa told him to run into the family's apartment, neither Figueroa, nor his partner, recalled the boy's presence when the group arrived.

The two other members of the group who testified for the Commonwealth received favorable treatment from the prosecutor in return for their testimony against the defendant. They also were close friends with the other members of the group, but had never met the defendant before the night on which the incident occurred.

The defendant possessed a knife consistent with the victim's wound, but there was testimony that such knives were mass produced and readily available.[9] There was an absence

---

[8]At trial, Sergio Renta testified that he saw three men, one of whom was the defendant, force their way into the apartment. In the first statement he made to police after the incident, he said that he saw "some guys" running *out* of the apartment, among them was the defendant, with a knife in his hand, trying to close the door.

Two days after the incident, the boy told an investigating State police detective that he had seen three men force their way into the apartment. He claimed to have seen the door to the apartment fly open, and the defendant stab the victim. According to this statement, the victim then opened his eyes wide, took two steps back, grabbed onto a curtain and collapsed on the floor. At trial, the boy agreed that these vivid details were inventions and testified that he had been unable to see what happened inside the apartment.

[9]The defendant had this knife in his possession, in a pants pocket, when he was arrested shortly after the incident. There was evidence, however, that the defendant had changed his pants between the time of the incident and the time of his arrest.

of forensic evidence tending to prove that the defendant was the actual assailant. Testimony as to the defendant's conduct after the incident, if believed, tended to suggest that he may not have known the victim had been stabbed. There thus was a basis in the evidence for the jury to find that the Commonwealth had not established beyond a reasonable doubt that the defendant stabbed the victim.

In his closing argument, the prosecutor stressed to the jury that they could find the defendant guilty of murder in the first degree on a joint venture theory even if they did not find that the defendant had stabbed the victim. It appears that the jury were not convinced that the defendant had committed the fatal assault on the victim. Just prior to returning their verdicts, the jury sent the judge the following question: "In regards to case number 19305 [the murder indictment], does murder in the first degree by reason of deliberate premeditation require positive identity of the stabber or does joint venture apply?" As he had done previously, the judge, in response to the question, instructed the jury that they could find the defendant guilty of premeditated murder only if they found that he had stabbed the victim.[10]

The judge then went on to instruct the jury as follows:

"The statute also says, murder committed in the commission or attempted commission of a crime punishable with life imprisonment is murder in the first degree.

"So, putting aside deliberate premeditation, if the Commonwealth has proved beyond a reasonable doubt

---

[10]As a general matter, an individual who has planned with another to murder a third person, but who did not himself commit the homicide, could be guilty as a joint venturer of murder in the first degree by reason of premeditation. See, e.g., *Commonwealth* v. *Cohen*, 412 Mass. 375, 379-380 (1992). In this case, however, the Commonwealth appears to have concluded that there was not sufficient evidence of an agreement among members of the group to sustain a conviction on this theory. The parties agreed that the jury should be instructed that they could find the defendant guilty of premeditated murder only if they found that he stabbed the victim.

all of the elements of indictment number 19307, the house invasion, so-called, as I explained those elements to you yesterday, that Samuel Abreu was murdered during the commission or attempted commission of a life imprisonment felony involving conduct itself that is dangerous to human life, and I advise you parenthetically the house invasion crime, so-called, Chapter 266 Section 14, is a life imprisonment felony. That is, it meets the criteria.

"So, if the Commonwealth has proved the elements of that indictment beyond a reasonable doubt, that Samuel Abreu was murdered during the commission or attempted commission of a life imprisonment felony, and that the defendant was a participant, a joint venturer in the commission or attempted commission of that underlying or predicate crime, underlying felony, it's sometimes called, then the Commonwealth has proved the defendant guilty of murder in the first degree."

So instructed, the jury rejected the allegation of murder in the first degree by deliberate premeditation, and returned their verdict, according to the foreperson, of "[g]uilty of murder in the first degree by reason of felony-murder." The jury thus appear to have decided that the defendant was not the stabber, but that he had associated himself with the killer in a joint venture. The last determination, however, lacked focus and legal finality because of the absence of the critical instruction on the knowledge element of joint venture.

In view of our conclusion that the jury may have returned a verdict based solely on the defendant's status as a joint venturer without finding, beyond a reasonable doubt, that he knew one of his companions was armed with a knife, the conviction of murder in the first degree by reason of felony-murder must be set aside. See *Commonwealth* v. *Floyd P.*, 415 Mass. 826, 833 (1993); *Commonwealth* v. *Matchett*, 386

Mass. 492, 511 (1982).[11] We now consider the defendant's conviction on the underlying felony, and conclude, in the unusual circumstances of this case, that this conviction also must be set aside.

b. The defendant argues that the judge erred by omitting an essential element from that portion of the charge which explained the elements of the felony underlying the charge of felony-murder. The judge instructed the jury that the Commonwealth had to prove, beyond a reasonable doubt, that the defendant had broken into and entered a dwelling in the night time, with the intent to commit a felony therein. He further instructed the jury that they must find, beyond a reasonable doubt, "that the defendant either individually or as a joint venturer commit[ted] an actual assault on an occupant. That is an attempt to do bodily harm to another or conduct putting another reasonably in fear of immediate bodily injury." The judge's instructions did not define the term "felony," and they also failed to inform the jury that the Commonwealth had to prove that the defendant had entered the apartment specifically intending (or, as a joint venturer, sharing the specific intent of his companions) to commit, after entry, the felony of armed assault.[12] See *Commonwealth*

---

[11]In view of the jury's rejection of the claim of premeditated murder, the defendant is to be retried only on the allegation that he committed murder in the first degree by reason of felony-murder. The jury could have rejected premeditation but nonetheless have found the defendant guilty of felony-murder based on his own conduct and not as a joint venturer. There is nothing to prevent the Commonwealth from proceeding on this theory when the case is retried.

[12]The Commonwealth suggests that there are a number of felonies, primarily involving breaking and entering with the intent to rob or extort, which might have satisfied the "intent to commit a felony" requirement of the charge against the defendant, and that the jury reasonably might have inferred that the defendant had the intent to commit one of these offenses when he broke into Figueroa's apartment. The indictment on the predicate felony was framed under G. L. c. 266, § 14, and charged that the defendant "did break and enter a dwelling house in the nighttime with intent to commit a felony and did make an actual assault on [the victim], a person lawfully therein." Consistent with the indictment, the evidence indicated that the Commonwealth proceeded on the theory that the defendant intended to commit an armed assault when he broke into Figueroa's apart-

v. *Ronchetti*, 333 Mass. 78, 81-82 (1955) (on charge under
G. L. c. 266, § 14, Commonwealth was required to prove
specific intent with which break was committed).

Proof of intent to commit a felony may be inferred from a
defendant's actions. See *id.* See also J.R. Nolan & B.R.
Henry, Criminal Law § 406 (2d ed. 1988). In this case, the
evidence would have supported the necessary inference, but it
also would have supported an inference that the defendant
had entered the apartment with the intent to commit a sim-
ple, or unarmed, assault, which would not have been a fel-
ony. In view of the charge as given, in which the jury were
told that they must find that the defendant entered the
apartment with the intent to commit a felony, and in which
the elements of simple, or unarmed, assault were fully de-
scribed, the jury may have understood that entry into the
apartment with intent to commit a simple assault was suffi-
cient for conviction on the burglary indictment.[13] The

ment. None of the other felonies was the basis for the charge against the
defendant, nor was the case tried on these theories. They may not serve as
the basis for sustaining a verdict on appeal. See *Commonwealth* v. *Grasso*,
375 Mass. 138, 139 (1978) (case must be proved as charged and charged
as proved); K.B. Smith, Criminal Practice and Procedure § 735 (2d ed.
1983). See also *Commonwealth* v. *Johnson*, 399 Mass. 14, 15 (1987);
*Commonwealth* v. *Olson*, 24 Mass. App. Ct. 539, 544-545 (1987) (appeal
must be based on what took place at trial).

[13]The pertinent portions of the charge were as follows:

"Fourth, the Commonwealth must prove beyond a reasonable
doubt that the defendant either individually or as a joint venturer
possessed the specific intent to commit a felony therein.

"Assault and battery—strike that.

"The fourth element is the intent to commit a felony in the dwell-
ing house after breaking and entering in the night time.

"Fifth, the Commonwealth must prove, by the way I call your
attention parenthetically that once again with respect to that ele-
ment of this offense, that is, that specific intent element the Com-
monwealth must prove that the defendant possessed the capacity to
form the specific intent required either individually or as a joint ven-
turer participant and that he did actually form such an intent.

"Fifth, [*sic*], that the defendant either individually or as a joint
venturer commits an actual assault on an occupant. That is an at-
tempt to do bodily harm to another or conduct putting another rea-
sonably in fear of immediate bodily injury."

charge, viewed as a whole, see *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 556-557 (1990), thus permitted the jury to find the defendant guilty of violating G. L. c. 266, § 14 (and, as a consequence, guilty of murder in the first degree by reason of felony-murder), if they found that he had entered the apartment with the intent to commit an unarmed assault, and one of his companions, whom he need not have known was armed, fatally assaulted the victim.

"The effect of the felony-murder rule is to substitute the intent to commit the underlying felony for the malice aforethought required for murder." *Commonwealth* v. *Matchett*, *supra* at 502. In this case, the jury were inadequately instructed on the intent required for commission of the predicate felony. This error was not raised below. We think it of sufficient magnitude, when considered in combination with the omission in the joint venture instruction (which was properly preserved), to require relief in connection with the breaking and entering conviction in order to avoid a miscarriage of justice. Accordingly, both convictions will be reversed.

3. We briefly address an additional claim of error raised by the defendant which may be an issue at a new trial. The defendant objected to an instruction on consciousness of guilt, which the judge gave based on testimony suggesting that the defendant had changed his pants after the incident occurred. Evidence of consciousness of guilt was not overwhelming, but it was within the judge's discretion to give the instruction. The instruction, which contained the essential points set out in *Commonwealth* v. *Toney*, 385 Mass. 575, 584-585 (1982), was correct in its particulars and sufficient in the circumstances.

4. The judgments are reversed and the verdicts set aside. The case is remanded to the Superior Court for a new trial consistent with this opinion.

*So ordered.*