## COMMONWEALTH *vs.* LUIS COLON.

No. 00-P-622.

Suffolk. August 29, 2001. - October 4, 2001.

Present: LAURENCE, MASON, & BERRY, JJ.

*Robbery. Dangerous Weapon. Joint Enterprise. Practice, Criminal,* Required finding, Instructions to jury. *Constitutional Law,* Assistance of counsel.

At the trial of an indictment alleging a joint venture theory of armed robbery, a motion for a required finding of not guilty was properly denied where there was sufficient evidence for the jury to find that the one who accosted the victim was armed with a dangerous weapon within the meaning of G. L. c. 265, § 17, and that the defendant knew that the perpetrator was armed with a dangerous weapon. [727-729]

At the trial of an indictment alleging a joint venture theory of armed robbery, the judge's failure to instruct the jury that they were required to find that the defendant knew the perpetrator was armed in order to convict the defendant of armed robbery on a joint venture basis resulted in a substantial risk of a miscarriage of justice with respect to the armed robbery conviction [729-731]; because the jury had found the defendant guilty on the lesser included offense of unarmed robbery, this court modified the judgment to show a conviction for unarmed robbery and remanded for resentencing on that offense [731-732].

At the trial of an indictment alleging a joint venture theory of armed robbery, defense counsel's cross-examination of a police officer did not constitute ineffective assistance of counsel, where the tactic of examining the officer to establish that the police, prior to causing the defendant's arrest, had not been careful to ensure that his physical characteristics actually matched the description that the eyewitness had given, was not unreasonable, given that the principal defense was misidentification. [732-733]

INDICTMENT found and returned in the Superior Court Department on November 18, 1996.

The case was tried before *David M. Roseman,* J.

*Geraldine C. Griffin* for the defendant.

*Rami M. Vanegas,* Assistant District Attorney, for the Commonwealth.

MASON, J. After a jury trial in Superior Court, the defendant,

Luis Colon, was convicted on a joint venture theory of armed robbery. See G. L. c. 265, § 17. He contends on appeal that the judge erred in (1) denying his motions for a required finding of not guilty made at the close of the Commonwealth's case and at the close of his own case; and (2) failing to instruct the jury that, in order to convict him of armed robbery on a joint venture theory, they were required to find that he knew that his coventurer was armed. He also claims that he was deprived of the effective assistance of counsel. We agree that the jury instructions on joint venture armed robbery were defective and we remand for resentencing upon the lesser included offense of unarmed robbery.

*The facts.* The jury could have found the following facts. At about 3:00 P.M., on October 4, 1996, two Charlestown High School students, Darnell Venable and Antonio Hobbs, were standing on a platform in the underground MBTA station at Downtown Crossing in Boston. The two students had just completed football practice and were waiting for a train to take them home. There were seven or eight other people also waiting on the platform.

While Venable and Hobbs were waiting for a train, they were approached by three men. One of the men was dark-skinned and about six feet, three inches tall; the second was dark-skinned and about five feet, seven inches tall; and the third, later identified as the defendant, was light-skinned and about five feet, eleven inches tall, appeared to be Hispanic, had a goatee, and also had a chipped front tooth. After the three men talked amongst themselves, the shorter dark-skinned man approached Hobbs and told him in a low whisper to turn over a chain and bracelet he was wearing. As the assailant said this, he reached into the inside pocket of his coat with his right hand, and placed his hand on a shiny object which Hobbs believed was made of chrome or metal. The assailant said to Hobbs, "[D]on't try to make a scene or anything . . . or something bad is going to happen to you." Fearing that the individual was going to "stab . . . shoot . . . or hit" him, Hobbs turned over his jewelry.

While this was transpiring, Venable was standing only a few feet away from Hobbs and so could hear the gist of what the assailant was saying to him. Venable accordingly started to move

toward Hobbs to render assistance, but the defendant, who was standing close to Venable, told him not to watch or worry about what was going on. Having been distracted by the defendant, Venable did not go to Hobbs's aid.

After Hobbs had handed over his jewelry, both the individual who had taken the jewelry and the defendant started to leave the area. The third man, who appeared to have been acting as a lookout during the incident, initially indicated to Hobbs that he would try to get his jewelry back for him, but then expressed doubt that he would be able to do so. He then joined the other two men in leaving the area.

After all three men had left, Hobbs told Venable that the man accosting him had had a gun. Hobbs then went home and told his aunt what had happened, and the aunt called the police. Three days later, Detective James O'Connell of the MBTA police interviewed both Venable and Hobbs at Charlestown High School and showed them various photographs, including a photograph of the defendant. Venable picked out the defendant's photograph and told O'Connell that if the person pictured in the photograph had a chipped tooth, then that was the person who was speaking to him during the robbery. The defendant was then arrested.

1. *Required finding of not guilty.* The defendant contends that his motions for a required finding of not guilty should have been allowed because there was insufficient evidence that the man accosting Hobbs (perpetrator) was armed with a "dangerous weapon" within the meaning of G. L. c. 265, § 17, or that the defendant knew that the perpetrator was armed with a dangerous weapon, as required for armed robbery joint venture liability. See *Commonwealth* v. *Fickett*, 403 Mass. 194, 196-198 (1988).

In determining whether an object used in a robbery is a dangerous weapon within the meaning of G. L. c. 265, § 17, the jury may consider "the nature, size, and shape of the object as well as the way in which it is handled or controlled." *Commonwealth* v. *Tarrant*, 367 Mass. 411, 416 (1975). The jury also should consider "whether, based on the objective conditions at the time of the assault, the exhibition of the instrumentality could *reasonably* engender the victim's fear and whether the

perpetrator of the robbery did intend to provoke that fear in order to facilitate the theft." *Id.* at 417 (emphasis in original). See *Commonwealth* v. *Johnson,* 27 Mass. App. Ct. 746, 748 (1989) ("It is not necessary that the object designated as a dangerous weapon be inherently dangerous, so long as that object, from the perspective of the victim, reasonably appears capable of inflicting bodily harm, and the accused intends the victim to be intimidated").

Viewed in the light most favorable to the Commonwealth, see, e.g., *Commonwealth* v. *Harris,* 47 Mass. App. Ct. 481, 489 (1999), the evidence in the present case showed that the perpetrator was armed with an object of uncertain size or shape but which appeared to the victim to be a weapon, specifically a gun or knife. The evidence also showed that the perpetrator purposefully displayed the object to the victim in such a manner as reasonably to provoke fear in the victim and thereby back up his threat that "something bad" would happen to the victim if he did not promptly turn over his jewelry as he was told. This evidence was sufficient to permit the jury to conclude beyond a reasonable doubt that the perpetrator was armed with a dangerous weapon within the meaning of G. L. c. 265, § 17. See *Commonwealth* v. *Johnson, supra* at 748-749 (hairbrush); *Commonwealth* v. *Nicholson,* 20 Mass. App. Ct. 9, 17 (1985) (toy gun). Contrast *Commonwealth* v. *Howard,* 386 Mass. 607, 609-611 (1982) (armed robbery conviction could not be sustained where evidence showed that the robber had in his possession no instrumentality at all).

The evidence also was sufficient to permit the jury to conclude beyond a reasonable doubt that the defendant knew that the perpetrator was armed with a dangerous weapon within the meaning of G. L. c. 265, § 17. First, such knowledge on the part of an active coventurer can be inferred where, as here, a robbery is committed in a public place under circumstances where it can be anticipated that a means must be found to persuade the victim to surrender his property quickly and without resistance. See *Commonwealth* v. *Watson,* 388 Mass. 536, 546-547 n.9 (1983), citing *Commonwealth* v. *Ferguson,* 365 Mass. 1, 9 (1974). See also *Commonwealth* v. *Tracy,* 27 Mass. App. Ct. 455, 457 (1989). Moreover, there was evidence

that the defendant conferred with the perpetrator immediately before the robbery and then stood within a few feet of the perpetrator and acted in concert with him when the perpetrator menaced the victim with the shiny object and proceeded with the robbery. This was more than sufficient to permit the jury to conclude beyond a reasonable doubt that the defendant knew that the perpetrator was armed with a dangerous weapon within the meaning of G. L. c. 265, § 17. See *Commonwealth* v. *Henderson*, 47 Mass. App. Ct. 612, 613 (1999) (jury could infer knowledge of gun on the part of coventurer from the fact that principal brandished gun as he exited car that coventurer was driving).

The defendant's reliance on *Commonwealth* v. *Powell*, 40 Mass. App. Ct. 430 (1996), and the other cases cited in his brief is misplaced. In *Powell*, there was no evidence that the perpetrator of a bank robbery had used any instrumentality at all to accomplish the robbery, much less that the coventurer had had any opportunity to observe any such instrumentality. See *Powell, supra* at 437-439. The defendant's motions for a required finding of not guilty therefore were properly denied.

2. *Jury instructions.* Although the evidence was sufficient to warrant the defendant's conviction for armed robbery, the judge failed to instruct the jury specifically that they were required to find that the defendant knew that the perpetrator was armed with a dangerous weapon. Instead, the jury were charged that to convict the defendant on a theory of joint venture, they were required to find that the defendant "participated or intentionally aided or assisted in the commission of the crime . . . [and] did so while sharing the intent, the mental state, required to commit the crime." The jury then were instructed generally on the elements of armed robbery, including the requirement that the perpetrator must be armed with a dangerous weapon.

Relying on certain dicta in *Commonwealth* v. *Melendez*, 427 Mass. 214, 219 (1998), the Commonwealth contends that the judge's instructions were adequate to convey to the jury that they were required to find that the defendant knew that the perpetrator was armed in order to return a guilty verdict. In *Melendez*, the court, citing a dissenting opinion in *Commonwealth* v. *Watson, supra*, noted that "[s]ome might conclude" that a

specific intent jury instruction combined with an armed robbery jury instruction was "adequate as a joint venture armed robbery instruction." *Melendez, supra* at 219. In *Commonwealth* v. *Claudio*, 418 Mass. 103 (1994), however, the court, citing the majority opinion in *Watson*, specifically rejected an argument advanced by the Commonwealth in that case that such an instruction was adequate. More specifically, the court said in *Claudio* that "[w]e reject the Commonwealth's argument that the judge's general instruction on specific intent, to the effect that the jury could not find the defendant guilty as a joint venturer unless they found that he shared 'the intent required to commit the crime in all respects,' sufficiently apprised the jury of the missing element [i.e., knowledge on the part of the defendant that the perpetrator was armed]." *Id.* at 112.

We likewise reject the Commonwealth's similar argument in the present case. The judge's instruction in this case was not adequate to alert the jury that they were required to find that the defendant knew that the perpetrator was armed in order to convict the defendant of armed robbery on a joint venture basis. See *Claudio, supra* at 111.[1] The defendant was entitled to such an instruction. See *Commonwealth* v. *Bourgeois*, 404 Mass. 61, 64 (1989).

The Commonwealth further notes that, even if the judge's failure to include an instruction on the knowledge requirement was erroneous, reversal is required only if it gave rise to a substantial risk of a miscarriage of justice, since the defendant neither requested such an instruction nor objected to the judge's failure to include such an instruction. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). The Commonwealth urges that the failure did not give rise to such a risk in this case since "whether the defendant knew his coventurer was armed was not an issue actively contested at trial."

It is true, as the Commonwealth asserts, that the principal defense asserted at trial was that the defendant had been misidentified and had not been present at the robbery at all, not that

---

[1]The Commonwealth has suggested that we might ignore the court's opinion in *Claudio* because its reliance on *Watson* as deciding the issue was unwarranted. As an intermediate appellate court, however, we are bound to follow the decisions of the Supreme Judicial Court.

he had been present but did not know that the perpetrator was armed. Nevertheless, the Commonwealth had the burden of proving beyond a reasonable doubt that, inter alia, the defendant knew that the perpetrator was armed, but the judge failed to give that instruction. In the circumstances, we conclude that the judge's failure to instruct the jury that they were required to find an essential element of the crime, namely that the defendant knew the perpetrator was armed, in order to convict the defendant of armed robbery on a joint venture basis resulted in a substantial risk of a miscarriage of justice with respect to the armed robbery conviction. See *Commonwealth* v. *Watson, supra* at 546 ("[W]e conclude that there was a substantial risk of a miscarriage of justice [within the meaning of G. L. c. 278, § 33E,] in the failure to charge the jury that [the defendant] could be guilty of felony-murder, based on armed robbery, only if he had knowledge of [the joint venturer's] possession of a gun"). See also *Commonwealth* v. *Skinner*, 408 Mass. 88, 97-98 (1990) (where defendant had not conceded premeditation, lack of proper instruction on issue could not constitute harmless error).

There is, however, no need for a new trial, as the Commonwealth has indicated in its brief and at oral argument that it is satisfied with, and is willing to accept, the jury's guilty finding on the lesser included offense of unarmed robbery. That finding was amply supported by the evidence and unaffected by the judge's failure to instruct the jury that they must find that the defendant knew that the perpetrator was armed in order to find the defendant guilty of joint venture armed robbery. We therefore will modify the judgment to show a conviction of unarmed robbery and remand for resentencing upon that offense.[2] See *Commonwealth* v. *Howard, supra* at 611 (remanding a robbery case to Superior Court where the evidence was sufficient to warrant a finding that the defendant had engaged in a robbery but was insufficient to warrant a finding that he was armed); *Commonwealth* v. *Powell, supra* at 439 (remanding for resentencing where the evidence was sufficient to warrant a

---

[2]The ranges of permissible sentences for armed robbery (G. L. c. 265, § 17) and unarmed robbery (G. L. c. 265, § 19) are identical: "imprisonment in the state prison for life or for any term of years."

finding that the defendant had participated in a robbery as a joint venturer but was insufficient to warrant a finding that he knew that the perpetrator was armed).

3. *Ineffective assistance of counsel.* During the cross-examination of Detective O'Connell, defense counsel elicited that, prior to causing the defendant to be arrested, Detective O'Connell asked another detective named Collins (who was assigned to the Boston Police Department youth violence strike force) whether anyone in that unit might know whether the defendant had a chipped tooth, and then caused the arrest to occur as soon as he had received a report back that an officer in the unit in fact was aware that the defendant had a chipped tooth. Counsel's apparent purpose in asking these questions was to establish that Detective O'Connell had acted hastily without ascertaining whether the defenant's chipped tooth was similar to that described by Venable, or even in the same part of the defendant's mouth. Thus, during his closing argument, counsel stated:

> "How about the police work? Shoddy, at best . . . . He goes right out and he puts a warrant on the guy. Yeah, he asked around . . . . But he didn't ask Mr. Venable where this chipped tooth was, how it looked, how big it was, nothing. He just heard, chipped tooth. Oh, this light-skinned Hispanic guy has a chipped tooth. Let's put a warrant out."

The defendant now asserts that this questioning by defense counsel constituted ineffective assistance of counsel warranting reversal of his conviction because the resulting evidence "permitted the jury to infer, to the defendant's great detriment, that he had previous involvement with law enforcement authorities." In fact, defense counsel's questioning elicited only that one police officer assigned to the youth violence strike force had previously seen or known the defendant, not that the defendant had previously been arrested or convicted for any crime. Contrast *Commonwealth* v. *Key,* 21 Mass. App. Ct. 293, 295-298 (1985) (reversal of a rape conviction required where the jury were informed that the defendant had been arrested for an alleged crime in the same place within days of the incident at issue). In any event, such trial tactics by defense counsel will

not support a claim of ineffective assistance of counsel unless they are "manifestly unreasonable when undertaken."[3] *Commonwealth* v. *Haley*, 413 Mass. 770, 777-778 (1992). See also *Commonwealth* v. *Sielicki*, 391 Mass. 377, 379 (1984). Where, as here, the principal defense was misidentification, it was plainly not unreasonable, much less "manifestly unreasonable," for defense counsel to attempt to establish that the police had not been careful prior to causing the defendant's arrest to ensure that his physical characteristics actually matched the descriptions that the eyewitnesses had given. We therefore reject the defendant's claim of ineffective assistance of counsel.

The judgment is modified to show a conviction of unarmed robbery, and the case is remanded for resentencing upon that offense.

*So ordered.*

---

[3]The defendant asserts that his counsel's questioning of Detective O'Connell cannot be considered part of a "trial strategy, reasoned or otherwise," because counsel made two pretrial motions in limine to exclude the very evidence elicited with such questions. In fact, the motions were directed at evidence of prior or subsequent bad acts of the defendant. Defense counsel's questioning of Detective O'Connell with respect to his failure to perform a more complete investigation prior to causing the defendant's arrest was not inconsistent with these motions.