## Commonwealth *vs.* Ronald LeClair.

No. 06-P-771.

Norfolk. December 12, 2006. - March 21, 2007.

Present: Lenk, Armstrong, & Mills, JJ.

*Robbery. Practice, Criminal,* Voluntariness of statement. *Evidence,* Voluntariness of statement, Prior misconduct, Joint venturer.

A Superior Court judge correctly denied the criminal defendant's motion to suppress statements he gave to the police, where the Commonwealth proved beyond a reasonable doubt that the defendant waived the Miranda rights and that his statements were voluntary, notwithstanding the defendant's assertion that he made the statements while under the influence of narcotic drugs. [483-485]

Although testimony at an armed robbery trial regarding a previous incident involving the defendant had no probative value and, thus, was improperly admitted [485-487], the evidence did not prejudicially affect the jury, in light of other strong evidence of the defendant's knowledge of a gun in the possession of his coventurer [487-488]; likewise, such evidence of the defendant's knowledge supported the trial judge's denial of the defendant's motion to set aside the verdict [488-489].

INDICTMENT found and returned in the Superior Court Department on November 4, 2003.

A pretrial motion to suppress evidence was heard by *Barbara A. Dortch-Okara,* J., and the case was tried before *Judith Fabricant,* J.

*James L. Rogal* for the defendant.

*Trisha R. Lee,* Assistant District Attorney, for the Commonwealth.

MILLS, J. After a six-day jury trial in Superior Court, the defendant was found not guilty of felony-murder, but guilty of armed robbery under a joint venture theory. On appeal, he raises these claims: (1) the denial of his motion to suppress statements was error because those statements were made while he was under the influence of narcotic drugs; (2) testimony by a prosecu-

tion witness admitted over objection, constituted unfairly prejudicial prior bad act evidence; and (3) there was insufficient evidence that the defendant knew his coventurer, Campanale,[1] had a gun when committing the robbery.

*Factual background.* On August 22, 2003, a car containing three occupants, including the victim, pulled into the parking lot of a Burger King restaurant in Quincy. While the car's occupants debated whether to go inside or use the drive-through window, a maroon car driven by the defendant, accompanied by Campanale, entered the parking lot and parked fifteen feet from the car in which the victim was a passenger. Campanale left the car in which he arrived, walked to the victim's car, opened the back door, and entered. He yelled at the victim to "give me what you got" and pointed a gun at the victim's stomach. When the driver began moving forward, Campanale pointed the gun at her and insisted that she park the vehicle. The driver and the other passenger then fled from the car, yelling about Campanale's gun.

Their yelling drew the attention of a customer who was then at the drive-through window. He heard a gunshot, and witnessed Campanale searching the victim's pockets and tucking something into his waistband. Campanale then returned to the car driven by the defendant, whereupon it sped screeching out of the parking lot. A significant police chase ensued, ending only when the car flipped over and Campanale, holding a gun, emerged. After exchanging gunfire with police, Campanale was ultimately shot and killed, and the defendant was taken into custody.

*Motion to suppress.* Upon arrival at the State police barracks in the South Boston section of Boston, the defendant was questioned by a series of officers over a period of several hours. Notwithstanding that Miranda warnings were administered, *Miranda* v. *Arizona,* 384 U.S. 436, 467-473 (1966), the defendant moved to suppress inculpatory statements made by him during the questioning. His motion to suppress and claim of error are premised upon the argument that he was intoxicated or experiencing drug withdrawal during the interrogation, thus invalidating the Miranda waivers and rendering his subsequent statements involuntary.

---

[1]During trial, Campanale was at times referred to as Raymond Campanella.

"The Commonwealth bears the burden of proving beyond a reasonable doubt, in the totality of the circumstances, that a defendant's waiver [of the Miranda rights] was voluntary, knowing, and intelligent, and that his statements were voluntary. . . . Absent clear error, we accept a motion judge's findings of fact . . . and a finding of voluntary wavier is given substantial deference." *Commonwealth* v. *Anderson*, 445 Mass. 195, 203 (2005), quoting from *Commonwealth* v. *Auclair*, 444 Mass. 348, 353-354 (2005).

After a hearing, the judge found that upon arriving at the police barracks at 8:10 P.M., the defendant was asked if he had consumed any drugs or alcohol, and he responded in the negative. State Trooper Steven Godfrey read the defendant the Miranda rights from a placard that was posted on the wall near the desk where the defendant was booked. The defendant indicated his understanding of those rights and his willingness to speak with the police. No indication that the defendant was intoxicated appeared during his interrogation by Trooper Godfrey. At the conclusion of that interview, the defendant stated that he was a heroin user and that, while he had not consumed any heroin that day, he had ingested a Fentanyl patch at approximately 1:00 P.M. Fentanyl, "a strong narcotic . . . used in patch form mostly by cancer patients[,]" when ingested, provides a "high" similar to that provided by heroin. The defendant then made a telephone call without difficulty.

Beginning at approximately 10:00 P.M., the defendant was interrogated by Sergeant Dermot Moriarty of the State police, Detective Michael Ward of the Quincy police department, and two other State troopers. Prior to the questioning, the defendant read a form containing the Miranda rights, said that he understood them, and signed the form. He stated that he was a heroin addict and had woken up "dope sick" that morning, and that he ingested a Fentanyl patch at 1:00 P.M. Though he appeared "a bit nervous," the defendant "was not sweating or shaking," "conversed normally with police . . . [and] spoke clearly without slurring his words." He never presented symptoms of "dope sickness" or withdrawal, nor did he complain of such symptoms. This interview concluded at approximately 11:15 P.M., and resumed when Sergeant Moriarty informed the defendant that he was under arrest for murder.

At that time, Sergeant Moriarty read the defendant the Miranda rights once again. Although the defendant "broke down and cried," he regained his composure and lucidly answered the sergeant's questions.

The final interview of the night commenced at approximately 12:00 A.M. and lasted one hour. It was preceded, once again, by the provision of Miranda warnings and the defendant's signing of a waiver. Though "very nervous" throughout, and "exhausted" by the end of the interview, the defendant remained "alert and coherent," and displayed no symptoms of intoxication or withdrawal.

Based upon the judge's thorough findings, we are confident in the correctness of her ruling that the Commonwealth proved beyond a reasonable doubt that the defendant waived the Miranda rights and that his statements were voluntary. As the judge found, even if the defendant were experiencing withdrawal or were under the influence of narcotics, there is no indication that this hindered his ability to waive the Miranda rights and voluntarily make statements thereafter. Being under the influence of drugs or experiencing drug withdrawal does not necessarily render one's statements involuntary, see *Commonwealth v. Ringuette*, 60 Mass. App. Ct. 351, 354 (2004), and we are satisfied that the judge's denial of the motion to suppress was correct.

*Admissibility of prosecution witness's testimony.* In his second claim of error, the defendant asserts that the testimony of a certain prosecution witness regarding a previous incident involving the defendant, Campanale, and a third person, constituted unfairly prejudicial propensity evidence. The witness stated that a man by the name of Joseph Beatrice was her ex-boyfriend and was involved in the sale of drugs. She further testified that several weeks prior to the date of the shooting at issue, she saw Campanale leave the house at which she and Campanale resided, accompanied by the defendant. She said that when Campanale returned, he told her that she no longer needed to worry about Beatrice and that Campanale had in his possession a gold necklace and wristwatch known by the witness to belong to Beatrice. Over defense counsel's objection, the trial judge admitted the testimony, finding it relevant to the defendant's knowledge of Campanale's intent on the date at

issue. The defendant's subsequent motion for a mistrial was denied.

We review the admissibility of this evidence to ascertain whether the judge committed "palpable error." *Commonwealth v. Mullane*, 445 Mass. 702, 708 (2006). See *Commonwealth v. Rodriguez*, 425 Mass. 361, 370 (1997). "Before prior bad act evidence can be admitted against a defendant, the Commonwealth must satisfy the judge that 'the jury [could] reasonably conclude that the act occurred and that the defendant was the actor.' *Huddleston v. United States*, 485 U.S. 681, 689 (1988). The Commonwealth need only show these facts by a preponderance of the evidence." *Commonwealth v. Leonard*, 428 Mass. 782, 785 (1999). While evidence of prior bad acts is inadmissible to show the defendant's propensity to commit the crime for which he is currently standing trial, such evidence is admissible "to show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." *Commonwealth v. Mullane, supra* at 708-709, quoting from *Commonwealth v. Helfant*, 398 Mass. 214, 224 (1986). Error is extant where the probative value of the evidence in question is outweighed by the danger of unfair prejudice to the defendant. *Commonwealth v. Fordham*, 417 Mass. 10, 22-23 (1994).

At sidebar, the prosecutor made an offer of proof as follows:

> "I expect she will say that on this particular — and this is a few weeks before that she sees Mr. LeClair with Mr. Campanella together. They leave together and come back. There won't be any mention of a gun, but when he comes back Mr. Campanella says you're not going to worry about Mr. Joe Beatrice any more and he has in his possession, a necklace of Beatrice's, a watch of Beatrice's."

This offer of proof was insufficient to support a finding, by a preponderance of the evidence, that Campanale robbed Beatrice, and even if it were sufficient for that purpose, it was insufficient to support a finding that the defendant was an actor in any such robbery. The witness's testimony, including that regarding Campanale's sale of drugs, the "no need to worry" remark, and the necklace and wristwatch belonging to Beatrice, had no probative value. Furthermore, the prosecutor's explicit

reference in his closing to the Beatrice incident[2] reveals that he presented the testimony to show that Campanale had a weapon intended or available to be used at the Burger King robbery. Aside from the lack of factual predicate, any such inference is totally illegitimate. Inasmuch as the witness's testimony about the Beatrice incident made no mention of a weapon, the prosecutor's argument was not based on evidence. None of the witness's testimony about the Beatrice incident should have been admitted.

Because the defendant preserved the issue,[3] we review the judge's action for prejudicial error, which involves a two-part analysis:

> "(1) was there error; and (2) if so, was that error prejudicial. An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial."

*Commonwealth* v. *Cruz*, 445 Mass. 589, 591 (2005), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

Having thoroughly examined the transcript and considered the defendant's argument, we conclude with fair assurance that the witness's improperly admitted testimony did not prejudicially affect the jury. We rely upon the substantiality of evidence of both the robbery as well as evidence that the defendant knew that Campanale had a gun available for use in the robbery.

We will not summarize the strong evidence of the defendant's participation in the robbery. However, we pay special attention

---

[2]The prosecutor argued the following: "What happened to Joe Beatrice, [the witness's] boyfriend, drug dealer? Do you remember that testimony when Mr. Campanella goes out with who, Ronnie LeClair? And when Campanella comes back what does he say to [the witness]? You don't have to worry about Joe Beatrice anymore. And what's he have on him, property of Joe Beatrice, a chain, a fake Rolex watch. He knows. He knows he has a weapon. He doesn't want the police to know that; doesn't want you to know that."

[3]At sidebar, the judge stated: "Your objection is noted. You don't need to raise it through this witness. I understand that your objection applies to the whole line of questioning."

to the evidence to support *armed* robbery, i.e., that the defendant knew Campanale had a gun. There was testimony at trial that (1) while the defendant had never seen Campanale with a gun, he had heard that Campanale always carried one; (2) the defendant knew that Campanale had been previously incarcerated for possession of a firearm; (3) the defendant knew that Campanale was going to rob someone of an ounce of cocaine at a Burger King restaurant in Quincy and that the defendant would be paid one hundred dollars to drive Campanale there; (4) after the robbery and shooting, Campanale reentered the car driven by the defendant, which sped out of the parking lot, and a significant police chase ensued; and (5) the defendant and Campanale had been planning the robbery for several weeks. We conclude that the trial evidence was very strong as to the defendant's knowledge, and we discern no reasonable consequential connection between the erroneously admitted testimony and the jury's necessary conclusion that the defendant knew that Campanale was armed. The error was not prejudicial.

*Motion to set aside the verdict.* Finally, the defendant argues that the judge erred in denying a motion to set aside the verdict on the armed robbery charge.[4] According to the defendant, the Commonwealth failed to prove both that he knew of Campanale's intent to rob the victim and that the defendant knew Campanale was carrying a firearm, and the judge should therefore have entered a guilty verdict on the lesser included offense of unarmed robbery. Indeed, the defendant goes so far as to assert that "there was no evidence that [he] knew that Campanale was planning to rob Nelson or that he had a gun to carry out the robbery." The evidence of the defendant's knowledge of the gun, discussed in the preceding section of this opinion, compels our conclusion that the judge properly denied the defendant's motion to set aside all or part of the verdict.

We also note that further support for the jury's verdict is found in the principle that a defendant's knowledge that the

---

[4]The defendant's motion was made pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 842 (1979), which provides in pertinent part: "If a verdict of guilty is returned, the judge may on motion set aside the verdict and order a new trial, or order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint."

perpetrator is armed with a dangerous weapon can be inferred where the robbery transpires "in a public place under circumstances where it can be anticipated that a means must be found to persuade the victim to surrender his property quickly and without resistance." *Commonwealth* v. *Colon*, 52 Mass. App. Ct. 725, 728 (2001). See *Commonwealth* v. *Netto*, 438 Mass. 686, 702-703 (2003). Indeed, in the joint venture context, "the defendant's knowledge requirement is satisfied by his or her knowledge that there is a substantial likelihood that the crime will be committed by the other person." *Commonwealth* v. *Walsh*, 407 Mass. 740, 743 (1990). Additionally, "[j]oint venture may be proved by circumstantial evidence, including evidence of flight together," and ample and dramatic evidence of flight was introduced by the Commonwealth here. *Commonwealth* v. *Williams*, 422 Mass. 111, 121 (1996). See *Commonwealth* v. *Tracy*, 27 Mass. App. Ct. 455, 458 (1989), quoting from *Commonwealth* v. *Giang*, 402 Mass. 604, 609 (1988) (our courts are "unwilling to adopt a rule which would create artificial barriers against inferences of complicity which may naturally be drawn against one found present in a getaway car during or shortly after an armed robbery").

*Judgment affirmed.*