## COMMONWEALTH *vs.* JOSEPH LEE.

Suffolk. February 10, 2011. - June 17, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Breaking and Entering. Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal, Required finding. Accessory and Principal. Evidence, Joint venturer, Intent. Intent.*

At the trial of a criminal complaint charging, inter alia, breaking and entering in the nighttime with intent to commit a felony, in violation of G. L. c. 266, § 16, the evidence of the defendant's intent to commit a felony was not sufficient to sustain the defendant's conviction on a theory of joint venture, where the inferences that the defendant intended to commit the felony of assault and battery by means of a dangerous weapon, or knew that his alleged coventurer possessed a knife when they forced their way into the apartment, may have been plausible, but could not bear the weight of proof beyond a reasonable doubt. [67-71]

COMPLAINT received and sworn to in the South Boston Division of the Boston Municipal Court Department on January 2, 2007.

After transfer to the Central Division of the Boston Municipal Court Department, the case was heard by *Marc H. Summerville*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joanne T. Petito* for the defendant.

*Zachary Hillman*, Assistant District Attorney, for the Commonwealth.

DUFFLY, J. Based on events that transpired after the defendant and a companion pushed their way into an apartment where a dinner party was in progress, the defendant was charged with several offenses in the South Boston Division of the Boston Municipal Court Department. Following a jury-waived trial, the defendant was convicted on a joint venture theory of breaking and entering in the nighttime with intent to commit a felony,

G. L. c. 266, § 16. He also was found guilty of assault and battery (on Lisa Bartolomucci) by means of a dangerous weapon, G. L. c. 265, § 15B (*b*); and two counts of assault and battery (on John Murphy and Tracy Connor), G. L. c. 265, § 13A (*a*).[1] The defendant appealed. The assault and battery convictions were affirmed by the Appeals Court in an unpublished memorandum and order pursuant to its rule 1:28. *Commonwealth* v. *Lee*, 76 Mass. App. Ct. 1127 (2010). We granted the defendant's application for further appellate review to consider the limited question whether there was sufficient evidence of the defendant's intent to commit a felony. Concluding there was not, we reverse the judgment of conviction of breaking and entering with intent to commit a felony. We remand the case for entry of a judgment of conviction on the lesser included offense of breaking and entering with intent to commit a misdemeanor and for sentencing pursuant to that offense.

1. *Facts.* We summarize the evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). On the evening of December 31, 2006, Erin Murphy (Erin) hosted a New Year's Eve dinner party for about a dozen guests at her apartment in the South Boston section of Boston. The invited guests included Erin's brother, John Murphy (John); his girl friend, Lisa Bartolomucci; and friends Tracy Connor, Dan Allen, and Kevin Huddleston. Guests milled about inside the apartment and on the deck or in the back yard of the building as they ate, drank wine, danced, and played games. At a point in the evening well before midnight, the defendant, who was alone at this point, entered a gate leading to the back yard from a back alleyway and sought to join John on the deck. John, who did not know the defendant, told him it was "not an open party" and turned him away. The defendant left through the back gate. He returned later in the evening, accompanied by Joseph McDonough; the two let themselves into the apartment through the front door, which had been closed. Erin did not recognize either of the men and two of her friends escorted them out of the apartment. It was approximately 11 P.M., when Erin observed through the oval glass window of her front door that the defendant and McDonough

---

[1] These convictions are not before us on further appellate review.

had returned and were at the top of the stairs. She shook her head, indicating "no," and the defendant and McDonough again departed.

Sometime after midnight, as Connor was talking with friends in the hallway of the apartment, she heard knocking at the front door. Opening the front door, Connor saw that the defendant and McDonough were standing there and that the defendant had opened the outer storm door. Connor stated that it was a private party, and "we already told you guys . . . you weren't invited." The defendant and McDonough began pushing the front door as Connor, joined by Allen and Huddleston, pushed against the door in an effort to close it. Suddenly, McDonough broke the front door glass window.[2] The defendant pushed open the door and entered the apartment with McDonough. Connor attempted to move out of the way as Allen and Huddleston tried to push the defendant and McDonough back out of the apartment. As Connor turned to walk away, the male guests and the intruders were "kind of wrestling each other" and Connor suddenly fell to the ground on top of another female guest; the defendant ended up on top of Connor with Allen and Huddleston on top of the defendant. Connor got up within a minute from the time she fell, by which time the defendant and McDonough were walking out of the apartment, followed by Allen and Huddleston.

Connor remained inside; someone telephoned the police. Erin followed Huddleston, Allen, and the two intruders outside. On the sidewalk, McDonough pulled out a knife and began jabbing at Huddleston and Allen. John soon arrived and attempted to talk to McDonough, telling him that the police had been contacted and that McDonough and the defendant had to leave. As John was talking to McDonough, the defendant twice punched John in the side of his face. Erin, Huddleston, and Allen retreated away from the knife-wielding McDonough and moved in the direction of the gate to the alley and back yard. Allen grabbed John around the waist and pulled him behind the gate into the alley with the others as Erin tried to keep the gate closed against the defendant and McDonough. The bottom of the gate stood about one foot off the ground and the top of the gate was at

---

[2]There is no evidence as to how the window broke, or what, if anything, was used to break it.

most six feet from the ground. From outside of the gate, Mc-Donough swung the knife over and under the gate. John, who is at least six feet, three inches tall, could see over it. His girl friend, Bartolomucci, had just come down the steps from the back porch and was standing in the back yard near the alleyway. The defendant hurled a champagne bottle over the gate; it sailed over John's head and struck Bartolomucci in the face, resulting in a concussion and two deep gashes that required at least sixteen stitches. At this point the defendant and McDonough ran away. The defendant was later apprehended by police, brought back to the scene where he was identified as one of the two intruders, and arrested.

*Discussion.* The Commonwealth's theory at trial was that the breaking and entering was part of a joint venture committed by the defendant and McDonough, who shared the intent to commit assault and battery by means of a dangerous weapon on the apartment's occupants.[3] At the time this case was tried, joint venture required proof that the defendant was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement, [was] willing and available to help the other if necessary." *Commonwealth v. Zanetti*, 454 Mass. 449, 455 (2009), quoting *Commonwealth v. Green*, 420 Mass. 771, 779 (1995). On review, we consider whether the evidence supports the finding that "the defendant knowingly participated in the commission of

---

[3]The Commonwealth argues, for the first time on appeal, that the evidence supports an intent to commit any number of felonies, including malicious destruction of property over $250, armed robbery, kidnapping, armed assault, armed assault with intent to murder, mayhem, or murder, and that the judge was not limited to finding only that the evidence supported an intent to commit assault and battery by means of a dangerous weapon. Arguments on appeal must be based on the theories on which the Commonwealth presented the case at trial. See *Commonwealth v. Claudio*, 418 Mass. 103, 117-118 n.12 (1994) (conviction of breaking and entering with intent to commit felony of armed assault cannot be upheld on appeal based on intent to commit a different felony where no other felony formed the basis for charge against defendant nor was case tried on those theories). At trial, the Commonwealth proceeded on the theory that the felony the defendant intended to commit was assault and battery by means of a dangerous weapon. We note, in any event, that the evidence does not support conviction based on an intent to commit any of the additional felonies suggested by the Commonwealth.

the crime charged, alone or with others, with the intent required for that offense." *Commonwealth* v. *Zanetti, supra* at 466.[4]

The defendant moved for required findings at the close of the Commonwealth's case and again at the close of all the evidence. He claims that the evidence failed to establish that, at the time of the breaking and entering, he either (a) intended to commit an assault and battery by means of a dangerous weapon; or (b) shared McDonough's intent to commit an assault and battery by means of a dangerous weapon, which requires proof that the defendant knew McDonough possessed a knife. See *Commonwealth* v. *Patterson,* 432 Mass. 767, 773 (2000), *S.C.* 445 Mass. 626 (2005).

There is no question that evidence of the use of force to gain entry into the apartment supports the element of breaking and entering, and that evidence of the defendant's pushing the door being held by Connor, or of his participation in the pile up that caused him to land on her, amply supports his conviction of the misdemeanor charge of assault and battery on Connor. We disagree with the Commonwealth that this is evidence also of the defendant's intent at the time of the breaking and entering to use a dangerous weapon against the apartment's occupants.

Absent here is any evidence that the defendant on entry used any dangerous weapon in committing the assault and battery. Nor is there any evidence that the defendant knew McDonough was armed with a knife until the two had moved to the street and McDonough showed the knife during the ensuing altercation with the party guests. The Commonwealth's reliance on *Commonwealth* v. *Perron,* 11 Mass. App. Ct. 915 (1981), is misplaced. In contrast to the evidence in the *Perron* case, where the defendant's intent to commit a felony could have been inferred from the actual commission of the felonious act, "as well as 'from the circumstances attending the act, and from the conduct and declarations of the defendant,' " *id.* at 917, quoting *Commonwealth* v. *Shedd,* 140 Mass. 451, 453 (1886), here, there is no evidence of a prior feud or violence involving the party goers

[4]See *Commonwealth* v. *Jansen,* 459 Mass. 21, 28-29 n.20 (2011) ("Sufficiency of the evidence claims regarding joint venture should be evaluated conformably with what we clarified in [*Commonwealth* v. *Zanetti,* 454 Mass. 449 (2009)]").

and the coventurers, or of any threats, declarations, or felonious acts inside the apartment. There also is no evidence that either the defendant or McDonough made any statements as they left the apartment to suggest that a prior plan or scheme to commit a felony had been thwarted.

The Commonwealth argues that McDonough's use of a knife to threaten the guests once he had been ejected from the apartment, and the defendant's use of his fists to assault John at that time, considered with events that preceded these acts, supports an inference that the defendant and McDonough were intent on retaliating against those at the party. The Commonwealth further argues that this evidence of motive, when coupled with the additional evidence of the defendant's failure to withdraw his support of the venture when McDonough pulled out a knife and began assaulting the guests, suggests a reasonable inference that the defendant had either the intent to commit an assault by means of a dangerous weapon at the time he entered the apartment, or that he shared McDonough's intent.

We disagree. Although McDonough's assault on the party guests in the street could have supported the defendant's conviction, as a joint venturer, of an assault and battery by means of a dangerous weapon, see *Commonwealth* v. *Sexton*, 425 Mass. 146, 152 (1997), it does not supply evidence of the additional element: that the intent to engage in the assaults on the party guests (who, by then, were no longer inside the apartment) had been formulated at the time of the breaking and entering. Even if we assume that such an intent could be attributed to Mc-Donough — based on evidence that McDonough had a knife that he, inferentially, brought with him to the apartment, and that he thereafter used it to threaten the dinner guests — the later attacks in the street do not support an inference that the defendant knew, at the time of the breaking and entering, that McDonough had a knife or shared with McDonough an intent to commit an assault and battery by means of a dangerous weapon on those in the apartment. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 111 (1994) (to convict defendant "as a joint venturer of breaking and entering in the night time with intent to commit an armed assault" Commonwealth must prove, beyond reasonable doubt, that defendant knew his coventurer was armed with

knife or other dangerous weapon). Such knowledge may be inferred from circumstantial evidence, including the defendant's actions, see *id.* at 118, statements, see *Commonwealth* v. *Lewis,* 346 Mass. 373, 378 (1963), cert. denied, 376 U.S. 933 (1964) (threats or declarations uttered), or a prior relationship between coventurers or shared motive, see *Commonwealth* v. *Netto,* 438 Mass. 686, 702-703 (2003). Here, however, such evidence was lacking, and thus a reasonable inference could not have been made that the defendant knew McDonough was armed with a knife or other weapon at the time they entered the apartment. See *Commonwealth* v. *Ronchetti,* 333 Mass. 78, 82 (1955) (specific intent to commit felony must exist at time of entry).

. We disagree with the Commonwealth that evidence that the two men "worked in concert" to gain entry to the apartment and, once inside, wrestled briefly with guests, supports a reasonable inference that the defendant must have known that McDonough was carrying a knife. *Commonwealth* v. *Housen,* 458 Mass. 702 (2011), relied on by the Commonwealth at oral argument, is clearly distinguishable on its facts. See *id.* at 707-709. Missing from the present case is any evidence that, at the time of their entry into the apartment, any crime necessitating the use of a dangerous weapon was threatened, anticipated, or planned by the coventurers. Nor did the evidence that the defendant and Mc-Donough fled when they heard police sirens provide a basis for the inference that the defendant knew his coventurer was armed at the time of the breaking an entering. Cf. *Commonwealth* v. *Le-Clair,* 68 Mass. App. Ct. 482, 488-489 (2007) (strong circumstantial evidence that defendant knew his coventurer had a gun coupled with evidence of their flight together provided reasonable inference of defendant's involvement in joint venture).

Finally, we do not agree that evidence that the defendant hurled a champagne bottle at the dinner guests, striking one of them in the face, provides the necessary inferential link that the defendant planned at the time he broke into the apartment to find a champagne bottle or other item to use as a dangerous weapon against occupants of the apartment. See *Commonwealth* v. *Poff,* 56 Mass. App. Ct. 201, 203-204 (2002) (requirement not met if intent formed after breaking and entering). The assault was too attenuated from the breaking and entering, and no

other evidence served to connect it to that event. Cf. *Commonwealth* v. *Lauzier*, 53 Mass. App. Ct. 626, 627-628 (2002) (defendant broke into parents' home knowing guns were present; once inside defendant's statements demonstrated his intent to use guns and thereafter he fired guns).

*Conclusion.* The inferences that the defendant intended to commit the felony of assault and battery by mean of a dangerous weapon or knew that McDonough possessed a knife when they forced their way into the apartment "may be plausible, but cannot bear the weight of proof beyond a reasonable doubt." *Commonwealth* v. *Rodriguez*, 456 Mass. 578, 583 (2010). We therefore reverse the judgment and vacate the sentence on the defendant's conviction of breaking and entering with intent to commit a felony and remand the case for entry of a judgment of conviction on the lesser included offense of breaking and entering with intent to commit a misdemeanor, G. L. c. 266, § 16A. The defendant is to be sentenced relative to that offense.

*So ordered.*