NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-10018


COMMONWEALTH  vs.  JOSEPH SPINUCCI.



Middlesex.    April 10, 2015. - September 29, 2015.

Present:  Gants, C.J., Botsford, Duffly, Lenk, & Hines, JJ.



Homicide.  Assault and Battery by Means of a Dangerous Weapon.
    Practice, Criminal, Instructions to jury, Hearsay, Capital
    case.  Malice.  Evidence, Joint venturer, Hearsay.  Joint
    Enterprise.  Dangerous Weapon.



Indictments found and returned in the Superior Court
Department on September 9, 2004.

The cases were tried before Paul A. Chernoff, J., and a
motion for postconviction relief was heard by him.


Joseph A. Hanofee for the defendant.
Fawn D. Balliro Andersen, Assistant District Attorney, for
the Commonwealth.


BOTSFORD, J.  In June, 2006, a Middlesex County jury found

the defendant guilty of the murder in the first degree of Ryan

Sullivan on the theory of extreme atrocity or cruelty; he also

was found guilty of four related offenses involving two other

victims, William Tighe and Jules Stevens.[1]  He appeals from these convictions and also appeals from the denial of his posttrial motion for relief.  He argues that the trial judge erred by declining to instruct the jury on manslaughter on a provocation theory; denying his motion for a new trial on the ground that a manslaughter instruction on this theory clearly was required; in connection with the murder charge, failing to instruct the jury that before they could infer malice from the intentional use of a dangerous weapon on the part of the defendant as a joint venturer with Van Gustave (see note 1, supra), the jury must find that the defendant knew Gustave was armed with a knife; allowing the jury to consider hearsay evidence to establish the defendant's knowledge that his alleged joint venturer Gustave possessed a knife; and denying the defendant's motion for a required finding of not guilty on the two charges relating to the victim Stevens.  He also claims that he is entitled to relief under G. L. c. 278, § 33E.  We affirm the defendant's convictions and decline to grant relief pursuant to c. 278, § 33E.

Background.  1.  Facts.  We summarize the facts the jury

---

[1] The defendant's codefendant, Van Gustave, was not tried together with the defendant.  The Commonwealth's theory at trial was that the defendant and Gustave committed all of the crimes charged as participants in a joint venture, although the Commonwealth argued that the roles each played -- whether "principal" or "joint venturer" or both -- differed in relation to each crime.

could have found, reserving certain details for later discussion in connection with the issues raised. On the night of July 1, 2004, the city of Somerville put on a fireworks display in Trum Field. The defendant, Gustave, and their respective girl friends, Claudine Dyer and Danielle Leblanc, met before the fireworks and went together to the event. All four were drinking before and during the fireworks display; Gustave and Leblanc also had taken a number of Klonopin pills. As they were walking together toward the fireworks, Leblanc asked Gustave if she could hold his knife in case they ran into "anybody that I had problems with." Gustave answered, "No." Dyer similarly asked the defendant whether he had a knife and whether she could hold it; the defendant also answered, "No." The defendant heard the interchange between Gustave and Leblanc.

The foursome watched the fireworks from a garage roof on Albion Street, where they drank beer and smoked marijuana; the defendant and Dyer each drank approximately six beers. After the fireworks were over, the four began to walk on Cedar Street. William Tighe came running down the street from the bicycle path near them, and Leblanc confronted him with a statement or question about her brother and drugs. A heated dispute between Leblanc and Tighe ensued, in the course of which Tighe came up very close to Leblanc, shouting and threatening her, Dyer then approached Tighe and punched him in the face, and Tighe

responded by pushing Dyer down against a fence. As this confrontation was taking place, Sullivan and Stevens came walking down the street and were standing behind Tighe, whom they knew through Tighe's younger brother. Neither Sullivan nor Stevens carried a weapon, and neither said anything or joined the dispute. After Tighe pushed Dyer, the defendant and Gustave began to approach him, and they both took out their knives; Tighe did not have a weapon. Tighe began to run down Warwick Street, and told Stevens and Sullivan to run; Gustave and the defendant ran after Tighe in pursuit. Tighe stumbled as he ran; the defendant caught up to him, and stabbed him with a knife in the back, inflicting a superficial wound. Tighe got up and continued to run. The defendant and Gustave ran toward Stevens and Sullivan. Gustave grabbed Stevens by the waist and stabbed him in the side; Stevens fell to the ground. The defendant did not attack Stevens, but connected with Sullivan. At this point, the entire group was on Warwick Street. The defendant stood and then crouched over Sullivan, with his arm repeatedly stabbing him in the stomach area. Gustave then joined the defendant in stabbing Sullivan; Sullivan appeared to be fighting against them. Leblanc kicked Sullivan a few times in the head as he lay on the ground, and Dyer also may have kicked him.

As these events were unfolding on Warwick Street, Michael McCormack, Tighe's stepfather, who was in the backyard of his

house on Warwick Street, heard a young male voice say, "Get off me. Leave me alone," and came running out of his driveway. He saw the defendant and Gustave bending over Sullivan and Stevens, who were both lying on the ground. McCormack ran toward the defendant and Gustave, swearing at them, and "bowled them over." The defendant and Gustave ran away, as did Dyer and Leblanc.

As they ran, Dyer stopped and asked Gustave and the defendant why "that kid" was bleeding, and Gustave responded, "Because we just stabbed them. We just stabbed them." The defendant said, three times, "I'm on probation." He also said, "I can't believe this." Dyer was running a little behind the defendant, and as they ran, a resident who was out on a porch heard the defendant say, "Hurry the fuck up. I just stabbed three people, three guys, and I'm going to jail for three years." The defendant, Gustave, Dyer, and Leblanc ultimately ended up at Leblanc's house in Somerville.

In the meantime, McCormack and his wife, Elizabeth McCormack, who is Tighe's mother, tried to tend to the two prone victims; each recognized both Sullivan and Stevens. A telephone call was made to 911. Sullivan and Stevens were taken to the hospital. Sullivan died within one hour, having received at least seven stab wounds; he was sixteen years of age. Stevens lost his kidney and spent thirty days in the hospital; he was

seventeen years of age.[2]

2. Procedural history. On September 9, 2004, a Middlesex County grand jury returned indictments against the defendant and Gustave, charging each of them with murder in the first degree of Sullivan (count one); armed assault with intent to murder Stevens and Tighe (counts two and three); assault and battery of Stevens by means of a dangerous weapon, causing serious bodily injury (count four); and assault and battery of Tighe by means of a dangerous weapon (count five). The defendant's case was severed from Gustave's before trial. See note 5, infra. The jury found the defendant guilty of murder in the first degree of Sullivan on the theory of extreme atrocity or cruelty, as well as on counts four and five, charging assault and battery by means of a dangerous weapon of Stevens and Tighe, respectively.[3] On the charges of armed assault with intent to murder Stevens and Tighe, the jury convicted the defendant of the lesser included offense of assault by means of a dangerous weapon.[4] The

---

[2] The defendant and Gustave were in their mid-twenties.

[3] The jury did not find the defendant guilty of deliberately premeditated murder.

[4] The defendant was sentenced to life imprisonment without parole on the murder indictment; a term of from nine to ten years on count four to be served concurrently with the life sentence; and, on count five, a term of from seven to eight years to be served concurrently with the life sentence and from and after the sentence on count four. Counts two and three were placed on file with the defendant's consent.

defendant filed a timely appeal in this court.[5]

In November, 2007, the defendant filed, pro se, his posttrial motion in the Superior Court.[6]  Thereafter, the defendant's appeal to this court was stayed while the defendant pursued his posttrial motion.  The trial judge heard the motion, taking evidence on the defendant's claim of ineffective assistance of counsel.  After that evidentiary hearing, the judge denied the defendant's posttrial motion.  The defendant's appeal from the denial of that motion has been consolidated with his direct appeal of his convictions.

Discussion.  1.  Manslaughter instruction.  The defendant argues that the judge committed reversible error in declining to instruct the jury on voluntary manslaughter as a lesser included offense of the murder charge.  He claims that, as the judge "found" in ruling on the defendant's motion for a new trial,

---

[5] The parties assert that, some months after the defendant's trial and convictions, Gustave pleaded guilty to murder in the second degree and to the other charges against him.

[6] The motion is entitled, "motion for required finding of not guilty, or guilty of a lesser included offense, or lesser degree of guilt pursuant to [Mass. R. Crim. P.] 25 (b) (2)[, 378 Mass. 896 (1979),] and reversal of the imposition of sentence of first degree life pursuant to [Mass. R. Crim. P.] 28[, 378 Mass. 898 (1979)]" (posttrial motion).  The trial judge treated the defendant's posttrial motion as a combined motion for a required finding of not guilty under Mass. R. Crim. P. 25 (b), and a motion for a new trial under Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001).  We consider the substance of the posttrial motion in the same manner.

there was evidence that Sullivan had jumped on the defendant's back and the defendant pushed him off.[7]  He then asserts that this evidence would permit the jury to find that the defendant, in stabbing Sullivan thereafter, was acting in a heat of passion on reasonable provocation or induced by sudden combat.  We disagree.[8]

The defendant is correct that if any view of the evidence

---

[7] The defendant contends that the judge found as a fact that Danielle Leblanc saw Ryan Sullivan jump on the defendant's back. The judge made no such finding.  In his posttrial ruling, the judge summarized and discussed Leblanc's trial testimony, and described Leblanc as having testified that she saw "a third man" jump on Spinucci's back.  The judge referred to Leblanc's "testimony that she saw Sullivan jump on Spinucci's back before Spinucci thr[e]w him off" (emphasis added).  However, in her testimony, Leblanc never identified the man.  Nor could the judge have made a finding that Leblanc saw Sullivan jump on the defendant's back, given that at the evidentiary hearing held on the defendant's posttrial motion, the only person who was sworn and testified as a witness was the defendant's trial counsel, whose testimony did not refer at any point to Leblanc's alleged observation.

[8] During the charge conference at trial, the judge rejected the defendant's request for a manslaughter instruction, stating that he did not think the evidence supported such an instruction.  In making the request for the instruction, however, the defendant's counsel did not mention Leblanc's testimony about seeing a person jump on the defendant's back; counsel focused only on the defendant's alleged heat of passion caused by William Tighe's attack on the defendant's girl friend, Claudine Dyer.  In his ruling on the defendant's posttrial motion, the judge concluded that no manslaughter instruction was called for because the physical contact between the defendant and Sullivan as described by Leblanc was not sufficient to warrant an instruction, even if the contact had been initiated by Sullivan.  We conclude that an instruction on voluntary manslaughter was not warranted but for different reasons.

would permit a finding of voluntary manslaughter, an instruction on this lesser offense must be given.  See, e.g., Commonwealth v. Garabedian, 399 Mass. 304, 313 (1987).  It is also the case that such an instruction cannot be refused even if the evidence on which the claim for a manslaughter instruction is based is not "of a character to inspire belief" (citation omitted).  See id.  But an instruction on voluntary manslaughter is only warranted "if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool." Commonwealth v. Acevedo, 446 Mass. 435, 443 (2006), quoting Commonwealth v. Andrade, 422 Mass. 236, 237 (1996).  The jury also must be able to infer from the evidence "that a reasonable person would have become sufficiently provoked and that, in fact, the defendant was provoked," and that "there is a causal connection between the provocation, the heat of passion, and the killing" (quotations and citations omitted).  Garabedian, supra.

The defendant does not contend that Leblanc identified the person she saw jump on the defendant's back, but argues that by process of elimination, the unidentified person had to have been Sullivan, because Leblanc identified the person as a male and stated that the male was not McCormack; the person was not Tighe, because Tighe ran back to his home after being stabbed by

the defendant; and the person was not Stevens because, the jury could find, Gustave previously had "stabbed and disabled" Stevens. To this, the defendant adds that he already was upset by Tighe's attack on his girl friend that had taken place only seconds before, and that if the jury were to find that the defendant had attacked Sullivan,[9] Sullivan's physical assault of the defendant independently provoked his emotions so that when the defendant attacked Sullivan, he was acting in the heat of passion due to provocation or sudden combat. See Commonwealth v. Hinds, 457 Mass. 83, 90-91 (2010), quoting Commonwealth v. Ruiz, 442 Mass. 826, 838-839 (2004) ("provocation must come from the victim").

The defendant's argument is defeated by an absence of evidentiary support. The evidence from which the jury could find that the defendant stabbed Sullivan came from three witnesses: Dyer, McCormack, and Stevens. Each of the three testified to seeing the defendant standing or crouching next to or over Sullivan's body, inferably engaged in stabbing him.[10]

---

[9] At trial, the defendant's theory of the case was that the defendant stabbed Tighe, but played no role in Gustave's attack on Stevens or Sullivan -- that Gustave was acting entirely on his own.

[10] Claudine Dyer testified that she saw the defendant and Gustave standing next to a person lying on the ground and repeatedly moving their hands downward toward the body -- testimony that permits the inference that the defendant and Gustave were engaged in stabbing the person -- but she did not

But none of them testified to seeing anyone jump on the defendant's back or indeed interact physically with the defendant before each saw the defendant standing over and stabbing Sullivan.  Leblanc was the sole source of evidence concerning someone jumping on the defendant's back.  She testified that she saw the person jump on the defendant's back and saw the defendant push the person off.  At no point did she testify to seeing any further interactions between the defendant and the person he had pushed off his back.  Rather, all she stated was that she had observed the person jump on the defendant's back either while or soon after she kicked the body of a male[11] lying on the ground on Warwick Street, and that this incident had happened around the time that she began to run down Warwick Street away from the body on the ground and she saw McCormack running on Warwick Street toward her.[12]

---

identify the person as Sullivan.  McCormack and Stevens both identified the defendant as the person they saw standing over and, inferably, stabbing Sullivan.

[11] Leblanc did not identify the male whom she saw lying on the street.

[12] Leblanc's testimony on direct examination suggested that she saw someone jump on the defendant's back right before Gustave ran by her and urged her to run and she saw Michael McCormack running towards her.  On cross-examination and redirect, Leblanc suggested that she witnessed the jumping incident after Gustave ran by and she saw McCormack.  In any event, the reasonable inference is that Leblanc saw the person jump on the defendant's back right around the time that she began to run and saw McCormack on Warwick Street.

The jury, of course, were free to believe or disbelieve, in whole or in part, the testimony of each witness.  See, e.g., Commonwealth v. Hawkesworth, 405 Mass. 664, 675 (1989).  Accordingly, the jury in theory could have credited Leblanc's testimony that she saw the body of only one person lying on the ground, and that the body she was kicking was that of Stevens, not Sullivan, and infer that the person who jumped on the defendant's back was Sullivan.[13]  But the jury were not entitled to attribute to any witness, including Leblanc, a statement or statements that the witness did not make.  See Commonwealth v. McInerney, 373 Mass. 136, 144 (1977).  Given the state of the evidentiary record, with no evidence of contact between the defendant and Sullivan following the alleged jump on the defendant's back, there simply was no factual basis on which it could be found that the defendant stabbed Sullivan in an emotionally heated response to the physical interaction between the two.  Put another way, the evidence necessary to support the essential causal link between any heat of passion on the defendant's part resulting from Sullivan's jumping on his back,

---

[13] If the jury were to make such findings, they would be required to reject the testimony of Dyer and McCormack that there were two bodies lying on Warwick Street at the time McCormack ran onto the scene, and the testimony of McCormack and Stevens that one of those prone bodies belonged to Sullivan -- because obviously, if Sullivan were then on the ground, he could not have been the person who jumped on the defendant's back.

and the defendant's stabbing of Sullivan, see Garabedian, 399 Mass. at 313, was missing.  The judge did not err in declining to include the charge on voluntary manslaughter in his instructions to the jury.

2.  Instruction on malice in connection with joint venture murder charge.  With respect to the charge of murder in the first degree, the Commonwealth's theory at trial was that the defendant and Gustave committed the crime as part of a joint venture.  More particularly, the Commonwealth argued that the defendant acted as a principal by stabbing Sullivan repeatedly with his knife, or as a joint venturer with Gustave who himself stabbed Sullivan repeatedly, or both.  The defendant's theory at trial, see note 9, supra, was that Gustave alone attacked Sullivan -- i.e., Gustave was the principal in the crime -- and that the defendant did not participate in that attack or share Gustave's intent, but actually tried to stop Gustave from continuing with that attack.  The judge instructed the jury that the Commonwealth's theory was that the defendant committed the crime of murder as part of a joint venture, and explained what the Commonwealth had to prove in order to establish that the defendant was guilty under this theory.  He also separately instructed on the elements of murder in the first degree.  In his instruction on the concept of malice in relation to murder under the theory of extreme atrocity or cruelty, he told the

jury:

> "Malice, for this theory of murder, also includes an intent to do an act, that in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would follow.
>
> "Under this third meaning of malice, you must determine whether based on what the defendant actually knew at the time that he acted, a reasonable person would have recognized that such conduct created a plain and strong likelihood that death would result.
>
> "In determining whether the Commonwealth has proven this third meaning of malice, you must consider the defendant's actual knowledge of the circumstances at the time that he acted. <u>Where there is evidence that a person brought a dangerous weapon to a scene and used the dangerous weapon on another, you may consider that evidence as relevant in proving malice</u>" (emphasis added).

The defendant's argument on appeal is not entirely clear, but appears to be that it was error for the judge to include this instruction concerning use of a dangerous weapon because, insofar as the Commonwealth was proceeding on a joint venture theory, the jury could infer the malice necessary for murder on the defendant's part from Gustave's use of a dangerous weapon, without any proof that the defendant knew Gustave was armed. Put another way, the defendant appears to claim that in the joint venture context presented by the Commonwealth, it was necessary to instruct the jury that the Commonwealth must prove that the defendant knew Gustave had a knife before they might infer malice on the defendant's part from Gustave's intentional use of that knife.

The argument fails. First, the instruction that the judge gave is most reasonably understood as referring to defining malice directly only in connection with the defendant. Thus, the reference in the quoted instruction to a "person" who brings and uses a dangerous weapon follows directly after the direction that the jury must consider the defendant's "actual knowledge" of the circumstances, suggesting that the "person" being referred to is the defendant. It seems highly unlikely the jury would interpret this instruction as indicating that if they found that Gustave had brought and used a dangerous weapon, they might infer from that finding the existence of malice on the defendant's part. Second, even if one were to conclude that the jury might understand the dangerous weapon reference in this instruction as meaning they could somehow consider Gustave's use of a dangerous weapon in considering the element of malice on the defendant's part, the judge's joint venture instructions -- given both as part of the judge's final charge and again in response to a jury question -- specifically told the jury that if the other person in the joint venture actually committed the substantive crime, the jury must find that the defendant himself had or shared the intent necessary for that crime, thus indicating that the jury must consider the defendant's intent on its own, not as an automatic transfer of the intent of the coventurer. These instructions were correct.

The defendant contends that to prove joint venture first-degree murder under a theory of extreme atrocity or cruelty where a dangerous weapon is involved, the Commonwealth should be required to prove that the joint venturer both knew the principal had a dangerous weapon and shared the principal's intent to commit the murder in an atrocious or cruel way.  That is not the law.  Where use of a weapon is not an element of the crime -- and it is not an element of murder in the first degree -- there is no requirement for the Commonwealth to prove knowledge on the part of a joint venturer that the principal was armed.  See Commonwealth v. Rosa, 468 Mass. 231, 245 (2014), citing Commonwealth v. Britt, 465 Mass. 87, 100 (2013).  In addition, in a case of joint venture first-degree murder committed with extreme atrocity or cruelty, malice alone defines the intent that the Commonwealth must prove.  See Commonwealth v Chaleumphong, 434 Mass. 70, 79-80 (2001) (intent necessary for murder in first degree under theory of extreme atrocity or cruelty is malice alone; "[i]f the Commonwealth has no burden to prove that a defendant who acted alone knew that his acts were extremely atrocious or cruel, then it has no such burden where the defendant acts in a joint venture"); Commonwealth v. Cunneen, 389 Mass. 216, 227 (1983) (same); Commonwealth v. Monsen, 377 Mass. 245, 254-255 (1979) (same).  Although in Commonwealth v. Berry, 466 Mass. 763, 777-778 (2014) (Gants, J.,

concurring), and Commonwealth v. Riley, 467 Mass. 799, 828 (2014) (Duffly, J., concurring), the concurring opinions suggested that it may be time to revisit the intent element of murder in the first degree committed with extreme atrocity or cruelty, this is not the case in which to do so. There was significant evidence indicating that the defendant himself was engaged in repeatedly stabbing the victim Sullivan, that Sullivan struggled to avoid the harm being inflicted, and that the stabbing wounds he received would have been painful. The judge properly instructed the jury under the principles of law that governed at the time; we leave to another day the question whether to change or modify those governing legal principles.

3. Evidence of defendant's knowledge that his joint venturer was armed with knife. Over the defendant's objection, the judge permitted Leblanc to testify that while she was walking with Dyer, Gustave, and the defendant to the fireworks, she asked Gustave for "the knife" in case she ran into anyone she "had problems with," and he said, "No." She also testified that she did not ask whether Gustave had a knife at that time, but assumed that he did. At the conclusion of Leblanc's testimony, the judge gave a limiting instruction to the jury to the effect that if they found that Gustave had stated that he possessed a knife and that the defendant had heard him make the statement, the jury could consider that evidence as relevant

only to the issue whether the defendant knew that Gustave was armed with a knife.[14]  The defendant argues that despite the limiting instruction, Leblanc's testimony about her exchange with Gustave was admitted for its truth, and constituted improper hearsay evidence.

There was no error.  The issue whether the defendant knew Gustave was carrying a knife was clearly relevant in this case, if for no other reason than that the Commonwealth's theory was that the two men were acting together as part of a joint venture, and that the crimes charged relating to Stevens and Tighe included as an element the possession or use of a dangerous weapon.  See, e.g., Commonwealth v. Lee, 460 Mass. 64, 69-70 (2011), citing Commonwealth v. Claudio, 418 Mass. 103, 111 (1994), overruled on another ground by Britt, 465 Mass. at 99 (to convict defendant as joint venturer rather than principal of crime involving use or possession of dangerous weapon, Commonwealth must prove defendant knew his coventurer was armed

_____

[14] The limiting instruction was actually more favorable to the defendant than the evidence dictated, in that there was no evidence before the jury that Gustave said he had a knife: Leblanc testified that she did not ask Gustave (and inferentially he did not state) whether he had a knife, but rather that she assumed he did.  Accordingly, the jury, if they were following the judge's limiting instruction literally, could not have inferred from Leblanc's testimony that Gustave stated he had a knife, and therefore could not have inferred that the defendant had knowledge that Gustave was carrying a knife.  We will assume, however, that the jury may have understood Leblanc as indicating that Gustave (inferentially) stated he had a knife.

with dangerous weapon). Contrary to the defendant's suggestion, however, the evidence was not admitted to prove that in fact Gustave had a knife. Contrast, e.g., Commonwealth v. Lowe, 391 Mass. 97, 104-105, cert. denied, 469 U.S. 840 (1984) (victim's statements to others about facts of past events inadmissible under state of mind exception to hearsay rule). Rather, the judge's limiting instruction specifically restricted the relevance and the jury's use of the statement to the defendant's state of knowledge and, as such, it was not hearsay. See Commonwealth v. Romero, 464 Mass. 648, 652 n.5 (2013). See also Mass. G. Evid. § 801(c) note (2015).

4. Sufficiency of evidence of defendant's guilt on charges relating to Stevens. The defendant was found guilty of assault and battery by means of a dangerous weapon causing serious bodily injury to the victim Stevens. The verdict was necessarily premised on a determination by the jury that the defendant was acting solely as a joint venturer with Gustave, because the undisputed evidence was that Stevens was stabbed only by Gustave.

As he did at the close of the Commonwealth's case when he moved for a required finding of not guilty, the defendant challenges the sufficiency of the evidence that he was guilty of this crime as a joint venturer. We review the evidence to determine whether a rational juror could conclude beyond a

reasonable doubt that the defendant knowingly participated in the crime at issue with the requisite intent.  See Commonwealth v. Marrero, 459 Mass. 235, 247 (2011), quoting Commonwealth v. Zanetti, 454 Mass. 449, 468 (2009).  See generally Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).

The evidence permitted a reasonable juror to find that the defendant and Gustave were close friends; that the two had come to the scene together with their respective girl friends; that the two took out and displayed their knives at the same time to confront the victim Tighe; and that the two chased the three victims -- Tighe, Stevens, and Sullivan -- and they both joined in physically attacking Sullivan.  The attacks on all the victims took place in a very short period of time and at least the attacks on Sullivan and Stevens took place in a circumscribed physical area:  when the police arrived, Stevens and the victim Sullivan were lying on the ground within a few feet of each other.[15]  Considered as a whole, the evidence was sufficient to warrant the jury's guilty verdict on this charge. See Latimore, 378 Mass. at 677-678.  The defendant's motion for a required finding of not guilty was properly denied.[16]

---

[15] McCormack also testified that Sullivan and Stevens were lying on the ground one or two feet apart when McCormack first saw them.

[16] In connection with this charge relating to Stevens, the judge did not instruct the jury that the Commonwealth must prove

5.  Relief under G. L. c. 278, § 33E.  The defendant argues that relief under G. L. c. 278, § 33E, is warranted here because of the prosecutor's closing argument -- the defendant claims improper appeals to emotion and that the prosecutor argued facts not in evidence, errors in the judge's instructions, and mitigating factors.  We have thoroughly reviewed the entire record of this case.  We conclude that the prosecutor's closing was not improper and find no reason that would warrant relief under G. L. c. 278, § 33E.

Judgments affirmed.

---

the defendant knew that Gustave was armed with a knife.  The instruction should have been given.  See, e.g., Commonwealth v. Lee, 460 Mass. 64, 69-70 (2011).  There was no objection raised at trial, however, and the question therefore is whether the failure of the judge to give such an instruction created a substantial risk of a miscarriage of justice.  See Commonwealth v. Bolling, 462 Mass. 440, 452 (2012).  We agree with the Commonwealth that there was no such likelihood.  There was strong circumstantial evidence that the defendant knew Gustave was armed with a knife at the time he stabbed Stevens, including the conversation between Leblanc and Gustave relating to Gustave's knife that the defendant could have overheard while they were all walking toward the fireworks; and evidence permitting the inference that the defendant saw Gustave holding a knife when they both confronted Tighe preceding Gustave's attack on Stevens.  See Commonwealth v. Kilburn, 426 Mass. 31, 35 & n.7 (1997), S.C., 438 Mass. 356 (2003) (knowledge that accomplice had weapon may be shown from circumstantial evidence).